CHARLES T. BARNEY and Another, Plaintiffs, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Defendant. No. 2.

78  337
78  336.

*Department of public parks of the city of New York—power to lay out a park, determined by the Consolidation Act—"public places," in section 670 thereof, not synonymous with "public parks."*

The power of the department of public parks of the city of New York to lay out a park is determined by the provisions of the Consolidation Act (Chap. 410 of 1882), by which the other provisions of law conferring power upon such department in that respect have been repealed.

The term "public places," as used in section 670 of the Consolidation Act, is not synonymous with the term "public parks," as used in other sections of such act, nor is the latter term included therein.

MOTION by the defendant, The Mayor, Aldermen and Commonalty of the City of New York, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon the verdict of a jury directed by the court after a trial at the New York Circuit.

*G. L. Sterling*, for the motion.

*J. A. Flannery*, opposed.

VAN BRUNT, P. J.:

This action was brought to recover from the city of New York a sum of money paid as taxes for the year 1887 upon certain real estate between Twelfth avenue and the Harlem river at about One

Hundred and Ninetieth street. It is claimed upon the part of the plaintiffs that the tax imposed was illegal and was paid by them involuntarily, and that they are entitled to recover the amount. The plaintiffs' land is within the lines of a so-called park shown on a map filed by the commissioners of the department of public parks in the city of New York on the 17th of April, 1884, they claiming to act in pursuance of authority conferred upon them by chapter 410 of the Laws of 1882. It is urged that by chapter 530 of the Laws of 1885, amending section 672 of the Consolidation Act, such lands were exempt from taxation, and that they were taxed and the tax paid in ignorance of the exemption, and that such payment was involuntary.

In view of the decision of the court of last resort in respect to involuntary payments of taxes and assessments, we think that the plaintiffs brought themselves within the rule authorizing a recovery.

The question as to whether the lands of the plaintiffs were exempt from taxation, and, therefore, the tax levied was illegal and void, presents a question of much greater embarrassment. There is no question but that the department of public parks did file a map showing a park thereon, which included the premises of the plaintiffs, and if such department had the power to lay out such park under the authority given them by law, then the tax levy was illegal and void. This question of power, it seems to us, must be determined by the Consolidation Act, as by that act the other provisions of law conferring powers upon the department of public parks in this respect seem to have been repealed, because the Consolidation Act presents a complete and revised system for laying out and opening public places and providing for the proceedings in respect thereto.

By section 670 of the Consolidation Act it is provided that "The department of public parks shall have and possess exclusive power to lay out, survey and monument all streets, roads, avenues, public squares and places within that part of the city of New York north and east of a line commencing at the termination of the southerly line of 155th street," etc. — a description covering the territory in which the land of the plaintiffs was situated. And the question presented is whether a park is to be considered a public square or place within the provisions of this section. The history

of legislation prior to the adoption of the Consolidation Act, which was in 1882, shows but little uniformity in legislative designation of public parks, public squares and public places. Many of the largest parks of the city were designated as public places, and spoken of as public places. But since the establishment of the department of public parks, in 1870, there has been seemingly a disposition on the part of the Legislature, in dealing with the question of public parks and public places, to make a distinction. And it is significant that in section 671 (the section following the one to which attention has been called), in treating of the territory embraced in the twenty-third and twenty-fourth wards and in conferring power upon the department of public parks in respect thereto, it is provided that such department shall have the exclusive power to locate and lay out, construct and maintain all public parks, streets, roads and avenues, etc., apparently showing that the Legislature had in mind the question of public parks, as distinguished from anything that had been referred to in the preceding section, in which the department was given the power to lay out, survey and monument all streets, avenues, public squares and places within the territory described, but not to construct or maintain anything said to be public parks. Had legislation stopped here, we think there would have been no question in regard to the fact that the Legislature did not intend that the department of public parks should have the right to lay out, survey and monument public parks within any district outside of the twenty-third and twenty-fourth wards. But when the Legislature came to confer the power to acquire the title of the land in the twenty-third and twenty-fourth wards, it uses this language:

" Sec. 677. The department of public parks, for and in behalf of the mayor, aldermen and commonalty of the city of New York, is authorized to acquire title for the use of the public to all or any of the lands required for the streets, avenues and roads, public squares and places laid out by them in the 23d and 24th wards of the said city of New York " — public squares and public places not having been mentioned in section 671, which gave the department the power to lay out, construct and maintain; and public parks not being mentioned in section 677, which gave the department the right to acquire title.

By section 956 it is provided that the department of public works shall possess certain powers in relation to the opening of streets, avenues, roads and public places above Fifty-ninth street, except in the twenty-third and twenty-fourth wards and not embraced within the limits of or immediately adjacent to any park or public place, except as in this act otherwise provided.

Then by section 957 it is provided that the department of public parks shall have the exclusive power to locate and lay out all public parks, streets, roads, avenues, and to devise plans, etc., in the twenty-third and twenty-fourth wards. And section 958 seems to be an exact copy of section 677.

It will thus be seen that in many of the sections in which this subject is referred to, distinctions between public parks and public places seem to be maintained; and that it is only by giving the most enlarged significance to the language used by the Legislature, that it can be held that under section 670 the department of public parks had the right to lay out, survey and monument the park in question. It is true that in sections 677 and 958, in dealing with the question of the laying out of the twenty-third and twenty-fourth wards, the words public squares and places are mentioned in respect to the acquisition of title, when the Legislature, in dealing with the question of the power to locate and lay out, did not use such words, but the words public parks. It seems to us that the only result of this difference is that the Legislature perhaps intended to give authority to the department of public parks to lay out parks in the twenty-third and twenty-fourth wards, but did not intend that they should be able to consummate their design by the acquisition of title, so that they might construct and maintain.

Without being able to satisfy our minds entirely, in consequence of the confusion of language in the legislation respecting this matter, we do not think that such an extraordinary power should be deemed to have been conferred by the Legislature upon the department of public parks unless the acts to be construed show a reasonably clear intention so to do. We think that such intention is not by any means clear, but that a distinction seemingly having been recognized between public parks and public places as above mentioned, and no clearly defined power having been conferred upon the department to lay out public parks, and there being nothing to indicate any

intention to confer such power, it should be held that such depart-
ment did not possess the same.

The exceptions should be sustained and a new trial ordered, with
costs to the defendant to abide the event.

PARKER and FOLLETT, JJ., concurred.

Exceptions sustained, new trial ordered, costs to defendant to
abide event.